UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**LORENZO GREENE,**<br><br>Defendant. | Case No. 1:25-mj-00175 (MJS) |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION FOR DEFENDANT LORENZO GREENE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its motion that the defendant, Lorenzo Greene (Defendant), be detained pending trial pursuant to 18 U.S.C. §§ 3142(e)(1), (e)(3)(B), and (f)(2)(A). On August 24, 2025, Defendant was pulled over after driving dangerously and erratically in a vehicle with stolen tags. He was found in possession of a firearm that could be used to protect the drugs, cash, and drug-selling paraphernalia found on the front passenger seat of the vehicle of which he was the sole occupant, after having been twice convicted (in 2022 and 2023) of firearms offenses in the District of Columbia. Moreover, his actions in this case, including running a red stoplight and driving across the center of the roadway towards oncoming traffic, show that he continues to present a serious risk of flight if released. Considering the factors specified under 18 U.S.C. § 3142(g), there is no condition or combination of conditions that will reasonably assure Defendant's appearance in court. Accordingly, the Court should detain

1

Defendant pending trial.

## BACKGROUND

Defendant is a U.S. citizen and resident of the District of Columbia. He is unemployed with a high school degree. The Pretrial Services Agency (PSA) report notes that he has no fixed address.

On the evening of August 24, 2025, law enforcement officers from the United States Park Police (USPP), United States Marshals Service (USMS), and Federal Bureau of Investigation (FBI) were on patrol in the Seventh District of Washington, D.C. operating under the Federal Task Force. At approximately 7:40 p.m., while driving near 17th Street SE and T Street SE, Washington, D.C., officers observed a gold Nissan Altima bearing a Virginia (VA) temporary tag with heavily tinted windows (the "VEHICLE"). According to a query of the National Crime Information Center (NCIC), the VA tag displayed on the vehicle had been reported stolen. [Exhibit 1] Officers observed the VEHICLE operating erratically, including running a red stoplight and driving across the center of the roadway towards oncoming traffic.

A USPP officer driving an unmarked USPP vehicle activated his lights and siren to initiate a traffic stop of the VEHICLE. Upon initiating the traffic stop, the VEHICLE accelerated, driving away from law enforcement while continuing to drive recklessly. The VEHICLE then turned into an alley, rounded a curve in the alley, and collided with an unmarked FBI vehicle that was driving with its lights and sirens activated as part of the Federal Task Force assisting with the traffic stop of the VEHICLE.

As officers approached the VEHICLE and issued commands, the driver, who was later identified as Defendant, exited the VEHICLE and attempted to flee on foot. Defendant was the sole occupant of the VEHICLE. Defendant did not follow verbal commands issued by officers,

and a physical struggle ensued between Defendant and officers as they attempted to apprehend him. During the struggle, one of the officers observed a black handgun protruding from the driver's waistband and recovered it. The firearm was a Taurus G3C handgun, 9mm caliber, containing 18 rounds (17 rounds in a large capacity ammunition feeding device and 1 round in the chamber). The firearm was marked with a serial number and an obliterated serial number. The firearm appeared to be fully functional and able to be fired with one hand; it had a barrel of less than twelve inches, and could fire a projectile by means of an explosive.

On October 6, 2022, in Criminal Action No. 2022 CF2-004896, Defendant was attempting to carry a pistol without a license (a misdemeanor) and later sentenced to 180 days' confinement.[1] On February 6, 2023, in Criminal Action No. 2022 CF2-7220, Defendant was convicted of carrying a pistol without a license (District of Columbia Code § 22–4504(a)), a crime punishable by imprisonment for a term exceeding one year. [Exhibit 2 at 9]

Officers conducted an inventory search of the VEHICLE, which uncovered a backpack on the passenger seat. Items found inside the backpack included two clear plastic bags containing approximately 140.4 grams and 27.3 grams, respectively, of a green leafy substance that field tested positive for marijuana; an open 150-count box of plastic sandwich bags; a black digital scale with residue of a green leafy substance; and miscellaneous other drug packaging materials. The items recovered, along with the quantity of narcotics, were consistent with materials used to weigh and distribute narcotics. Officers found $369 in U.S. currency on Defendant's person during a

---

[1] The Statement of Facts filed in support of the Criminal Complaint states that Defendant was convicted of carrying a pistol without a license in 2022 (Statement of Offense at 3), but on further research, the government discovered that this first conviction was for the misdemeanor charge of attempt.

search incident to arrest. Defendant's ready access to the firearm in his waistband would have enabled him to protect his drugs, cash, and drug-selling paraphernalia.

Defendant was arrested on August 24, 2025, on various D.C. Code charges.

## PROCEDURAL HISTORY

On August 26, 2025, a Criminal Complaint charging Defendant with violations of 18 U.S.C. § 924(c)(1)(a)(i) (Possession of a Firearm in Furtherance of a Crime), 18 U.S.C. § 922(g)(1) (Felon in Possession of a Firearm), and 21 U.S.C. § 841(a)(1) (Possession of a Controlled Substance with Intent to Distribute) was signed by the Honorable Matthew J. Sharbaugh of the U.S. District Court for the District of Columbia. Defendant had his initial appearance before Magistrate Judge G. Michael Harvey on August 27, 2025. At that hearing, the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(1)(E) and 3142(f)(2)(A). A detention hearing is scheduled for August 29, 2025.

## ARGUMENT

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). The government is proceeding under two theories in this case—(1) probable cause that Defendant has committed a violation of section 924(c), which creates a rebuttable presumption under 18 U.S.C. § 3142(e)(3)(B), and (2) serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A). Section 3142(e)(3) provides

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the

4

> community if the judicial officer finds that there is probable cause to believe that the person committed—
>
> . . .
>
> (B) an offense under section 924(c) … of this title.

Here, Judge Sharbaugh has found probable cause to believe that Defendant has violated 18 U.S.C. § 924(c). *See* Criminal Complaint. As detailed below, Defendant is also a serious flight risk.

In determining whether an individual is a flight risk, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g); *see also United States v. Vasquez-Benitez*, 919 F.3d 546, 551-51 (D.C. Cir. 2019). "A determination that an individual is a flight risk must be supported by a preponderance of the evidence. *Vasquez-Benitiz*, 919 F.3d at 551.

As a preliminary matter, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device and cross-examination should be limited to the disputed issues, since the detention hearing is not to be turned into a mini-trial and is not to be used as a subterfuge to obtain discovery. *See Smith*, 79 F.3d at 1210, and

*Williams*, 798 F. Supp. at 36.

Here, if released, Defendant poses a flight risk. He has been charged with serious crimes and is facing a five-year mandatory minimum sentence if convicted of the most serious offense (18 U.S.C. § 924(c)). According to the PSA report, he has no fixed address. He also has two prior convictions for possessing/attempting to possess firearms in the District of Columbia. And, his actions on the night of August 24, 2025, driving erratically and even driving across the center of the roadway towards oncoming traffic, show him to be a danger to the community.

## I.     The Nature and Circumstances of this Offense Merit Detention.

Here, Defendant is charged with violations of 18 U.S.C. § 924(c)(1)(a)(i), 18 U.S.C. § 922(g)(1), and 21 U.S.C. § 841(a)(1). His actions during the instant offense clearly demonstrate that he is a serious risk of flight. Upon initiating the traffic stop, Defendant accelerated the VEHICLE, driving away from law enforcement while continuing to drive recklessly. As officers, approached and issued commands to Defendant, he immediately attempted to flee and a physical struggle ensued. The first factor favors detention.

## II.    The Weight of the Evidence Against Defendant Favors Detention.

The second factor to be considered, the weight of the evidence, also favors detention. The government's case against the defendant is strong. The defendant's erratic driving and attempted flight were observed by multiple officers and were captured on video. Here, the weight of the evidence should be considered equally with the other § 3142 factors. In *United States v. Blackson*, following a thorough review of the text of § 3142 and decisions analyzing this factor, Judge Howell found that "the weight of the evidence should not automatically be weighed less than the remaining statutory pretrial detention factors." 2023 U.S. Dist. LEXIS 18988, at *29-30.  Instead, "the weight of the evidence against [a] defendant [should] be weighed as all factors are—in accordance with

the specific facts of this case—to determine whether pretrial detention is appropriate." *Id.* In an unpublished opinion, the D.C. Circuit affirmed Judge Howell's decision. *United States v. Blackson*, No. 23-3020, 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023). Moreover, the Second Circuit reached the same decision after a thorough and careful analysis of the issue. *United States v. Zhe Zhang*, 55 F.4th 141, 149-150 (2d Cir. 2022). This Court should follow *Blackson* and *Zhang;* this factor should be given no less weight.

Indeed, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *29-30. Accordingly, the second factor favors detention.

### III. Defendant's History and Characteristics also Favor Detention.

The third factor—the history and characteristics of the defendant—also favors detention. Although Defendant appears to have some ties to the community, he reportedly has no fixed address and no employment. Defendant also has two prior convictions for gun-related offenses.

Accordingly, the third factor weighs in favor of continued detention. *See United States v. Munchel*, 991 F.3d 1273, 1281 (D.C. Cir. 2021) (concluding that courts can and should "consider whether it believes the defendant will actually abide by its conditions when making the release determination"); *see, e.g., United States v. Glasgow*, No. 1:20-cr-27-7 (KBJ), 2021 U.S. Dist. LEXIS 109972, at *37 (D.D.C. June 11, 2021) ("Because Glasgow has previously disobeyed a court-ordered condition of pre-trial supervision, the Court has little faith that he would not do so again if released pending trial.").

### IV.     Defendant Presents a Danger to Our Community.

Defendant presents a danger to the community and a flight risk. He has shown a disregard for the rule of law—especially when it comes to firearms. He endangered others with his erratic driving, even before the officers began their pursuit.

Accordingly, there is no condition or combination of conditions that would reasonably assure that the defendant would return to court if he were released.

### CONCLUSION

The government respectfully requests that the Court issue an Order granting its motion that Defendant be held without bond pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:     */s/ Jolie F. Zimmerman*
Jolie F. Zimmerman
Assistant United States Attorney
D.C. Bar Number 465110
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7220
Email: jolie.zimmerman@usdoj.gov